UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JACKI JEAN GRIFFIS,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | NO.  C12-579-JLR-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Jacki Jean Griffis appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded.

I.   FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a forty-five year-old woman with a 12th grade education. Administrative Record ("AR") at 34-35. Her past work experience includes employment as a cleaner. AR at 20. Plaintiff was last gainfully employed in November 30, 2006. AR at 12.

REPORT AND RECOMMENDATION - 1

On May 7, 2008, plaintiff filed a claim for SSI payments and for DIB, alleging an onset date of November 30, 2006. AR at 10. Plaintiff asserts that she is disabled due to obesity, major depressive disorder, post-traumatic stress disorder and polysubstance addiction disorder. AR at 12.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 10. Plaintiff requested a hearing which took place on June 10, 2010. AR at 26-81. On August 23, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 10-21. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

REPORT AND RECOMMENDATION - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

As the claimant, Ms. Griffis bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On August 23, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since November 30, 2006, the alleged onset date.

3. The claimant has the following severe impairments: obesity; major depressive disorder; post-traumatic stress disorder (PTSD); and polysubstance addiction disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant could perform simple, routine tasks and follow short, simple instructions. The claimant could do work that needs little or no judgment and could perform simple duties that can be learned on the job in a short period. The claimant would have average ability to perform sustained work activities (that is, she can maintain attention, concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis (that is, 8 hours a day, 5 days a week or an equivalent work schedule) within the customary tolerances of employers rules regarding sick leave and absences. The claimant could have occasional interactions with co-workers and supervisors and can work in close proximity to co-workers but not in a cooperative or team

effort.  The claimant could respond appropriately to supervision, co-workers and work situations; and deal with occasional work setting changes.  The claimant would not deal directly with the general public, as in a sales position or where the general public is frequently encountered as an essential element of the work process; however, incidental contact with the general public is not precluded.

6. The claimant is capable of performing past relevant work as a cleaner. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2006, through the date of this decision.

AR at 12-21.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ improperly reject probative medical source opinions?

2. Did the ALJ erroneously rejected Ms. Griffis' testimony?

3. Did the ALJ made an inadequate step four finding?

4. Did the ALJ failed to meet her burden at step five of the sequential evaluation process?

Dkt. No. 19 at 2.

## VII.   DISCUSSION

A. <u>The ALJ Erred in His Assessment of the Medical Evidence</u>

*1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or

REPORT AND RECOMMENDATION - 6

the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

REPORT AND RECOMMENDATION - 7

consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. Dana Harmon, Ph.D.

Plaintiff was examined by Dr. Harmon in March 2008. AR at 332-42. Dr. Harmon diagnosed plaintiff with PTSD; major depressive disorder, recurrent and severe; polysubstance dependence, in early remission; asthma; and fluctuating hearing loss. AR at 343. When assessing her functional limitations, Dr. Harmon concluded plaintiff had a moderate degree of severity in areas of ability to learn new tasks, ability to exercise judgment and make decisions and the ability to perform routine tasks. He also opined that plaintiff had marked limitations in three social factors of ability to relate appropriately to co-workers and supervisors, ability to interact appropriately in public contacts, and ability to care for self, including personal hygiene and appearance. He found severe limitations in her abilities to respond appropriately to and tolerate the pressures and expectations of a normal work setting and her ability to control physical or motor movements and maintain appropriate behavior. AR at 344. To support his findings, Dr. Harmon wrote: "Jacki has had severe problems with anxiety, depression, and PTSD for most of her life, which seems closely linked to childhood experiences of abandonment, parental alcoholism, and physical and sexual abuse. She had a Beck Depression Inventory score of 46, which points to 'severe' levels of depression and emotional distress as well as a Beck Anxiety Inventory score of 32, which also points to 'severe' levels of anxiety and PTSD symptoms." *Id.* The tests administered were part of the record. AR at 347-49.

The ALJ did not specifically address Dr. Harmon's findings. Instead, he appeared to have lumped Dr. Harmon in with other providers, and with a broad brush, dismissed them all.

> I also give less weight to the opinions of the various consultative examining sources who concluded that due to the claimant's mental disorders, she is moderately to markedly impaired in severe cognitive and social functional areas

REPORT AND RECOMMENDATION - 8

> (Ex. 2F; 11F; 12F [Dr. Harmon]; 13F). I have carefully considered each of these opinions. First, it must be noted that their conclusions that the claimant is disabled due to impairments are on an issue specifically reserved under the Regulations to the Commissioner….Second, while there is objective evidence that the claimant has mental health conditions, and some resulting limitations, I find that these evaluations conducted for Department of Social and Health Services (DSHS) are largely based on the claimant's self-reported symptoms and complaints, and I do not find the claimant entirely credible. I further note that the evaluations were conducted for determining the claimant's eligibility for state assistance; the claimant was likely aware that the continuation of her state assistance was dependent upon the DSHS evaluations, and she therefore had incentive to overstate her symptoms and complaints. In addition, these assessments are inconsistent with the opinions of the state agency medical consultants who, as discussed above, concluded that the claimant's impairments would not prevent her from performing unskilled work, involving simple tasks and instructions and occasional social interaction. For all of these reasons, I find these assessments to be neither controlling nor persuasive and give them less weight.

AR at 19. The casual way in which the ALJ dismissed the opinion of Dr. Harmon (and other examining physicians reports) is matched only by the casual way in which the ALJ dismissed the legal standards for reviewing medical evidence set out above. Because Dr. Harmon (and others) was an examining physician, an ALJ may reject his opinions only by providing specific and legitimate reasons supported by the record. None of the reasons proffered by the ALJ meet this standard.

First, under the regulations, a treating physician's opinion regarding the ultimate issue of disability is not entitled to any special weight. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also* 20 C.F.R. § 404.1527(e); SSR 96-5p (providing that medical source opinions about whether an individual who has applied for disability is "disabled" or "unable to work," "can never be entitled to controlling weight or given special significance"). Accordingly, the ALJ is correct that the ultimate disability question is a matter left to the Commissioner. That being said, the opinions of examining physicians cannot be

REPORT AND RECOMMENDATION - 9

simply dismissed with this comment, at least not without violating the principles laid out in *Orn, supra.*

Second, the ALJ asserts that the findings were based largely on claimant's self-reports, and that he did not find the plaintiff to be credible. The ALJ's credibility determination will have to be revisited, as discussed below. Regardless, this "boilerplate" objection cannot serve by itself as a basis to reject examining physician's opinions, especially where the examining physician did not discredit the complaints and further supported the opinion with his own observations. *See Ryan v. Comm'r.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). This is especially true in the case of Dr. Harmon, who administered Beck Depression Inventory and Beck Anxiety Inventory tests to plaintiff, which, as Dr. Harmon concluded, supported his "severe" findings. The ALJ, in his attempt to simply broadly dismiss all the examining physicians' reports, simply chose not to discuss these issues.[2]

Third, the fact that the plaintiff made statements during an assessment for possible state benefits adds nothing to the analysis. The ALJ states that this provides an "incentive to overstate her symptoms and complaints." If the existence of such an "incentive" were enough to discredit examining physician reports, then there would be no reason to send claimants to be examined. Surely this cannot serve as a short cut for the analysis required.

Finally, the ALJ broadly lumps all of the examining physician reports together and comments that they are inconsistent with the opinions of non-examining reviewing State agency doctor reports. In doing so, the ALJ completely inverts the hierarchy of medical evidence analysis set forth in *Orn*, discussed in Section VII A (1)(a) above.

---

[2] In an apparent attempt to salvage the ALJ's legally indisputable error, the Commissioner suggests that perhaps someone other than Dr. Harmon may have administered these tests rather than Dr. Harmon. Dkt. 27 at 6. This is the worst form of speculation, as to which there is no basis in the record, an raises potential Rule 11 issues.

REPORT AND RECOMMENDATION - 10

On remand, the ALJ is directed to re-review all of the medical opinions in this case and to analyze the evidence in accordance with *Orn*.  This includes the opinions of treating sources.  Blanket statements do not serve as a substitute for analysis of the record.  For example, consistent GAF scores of 43-45[3] by Sound Mental Health counselors are also blithely dismissed by the ALJ as nothing more that subjective reports of the plaintiff.  AR at 19.  Yet, this is the same range found by Dr. Widlan (AR at 272).  The ALJ gave weight to Dr. Widlan's opinion, noted the GAF finding of 45 by Dr. Widlan, yet apparently does not disagree with Dr. Widlan's GAF assessment.  In light of the consistent scores, it is difficult to understand how the ALJ could so lightly dismiss the many other consistent scores.

The ALJ's decision regarding the medical evidence in its entirety is not supported by substantial evidence, nor is it free from legal error.  Accordingly, this case should be remanded for further proceedings, and instructions that the ALJ re-review all medical evidence and do so in accordance with the legal standards set forth in this opinion.

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas." *Id.*

B. Remaining Issues

Because the medical evidence will have to be re-reviewed in its entirety this will require a new administrative hearing. As the medical evidence permeates the remaining issues (e.g. credibility, plaintiff's RFC and steps 4 and 5 issues), it is unnecessary to deal with those issues at this time. The ALJ is directed to make new assessments on all these issues.

VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 10th day of December, 2012.

_____
JAMES P. DONOHUE
United States Magistrate Judge